Nos. 24-3776, 24-5009, 24-5227
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

L.A. INTERNATIONAL CORP., ET AL.,

*Plaintiffs-Appellees*,

v.

PRESTIGE BRANDS HOLDINGS, INC. AND MEDTECH PRODUCTS, INC.

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:18-cv-06809-MWF-MRW
Hon. Michael W. Fitzgerald
_____

PLAINTIFF-APPELLEE WHOLESALERS' REPLY ON CROSS-APPEAL
_____

Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
415.766.7451
mpoe@gawpoe.com
*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

ARGUMENT..................................................................................... 4

I.    PRESTIGE FAILS TO JUSTIFY THE DISTRICT COURT'S RATE-SETTING ERRORS. ................................................................ 4

    A.    Prestige Nowhere Defends the District Court's Error In Failing To Identify the Prevailing Rate For Antitrust Work................................. 4

    B.    Prestige Does Not Dispute That the District Court Failed to Award Current Rates. ................................................................... 6

    C.    Prestige Nowhere Defends the District Court's View That Antitrust Lawyers Must Work for Large Firms to be Entitled to the Prevailing Rate. ................................................................. 8

    D.    Prestige Nowhere Defends the District Court's 'Line-Holding' Rationale Against Awarding Fees at the Prevailing Rate. .................. 9

    E.    Prestige's Other Arguments are Unavailing. .....................................10

II.    PRESTIGE DISREGARDS THE AUTHORITY ON STATE-LAW BASED ENHANCEMENTS.................................................................12

CONCLUSION ...............................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alterman Foods, Inc. v. FTC*,
497 F.2d 993 (5th Cir. 1974)........................................................................12

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008)................................................................2, 10

*Chaudhry v. City of Los Angeles*,
751 F. 3d 1096 (9th Cir. 2014)................................................................3, 13

*Chavez v. City of Los Angeles*,
47 Cal. 4th 970 (2010) ...............................................................................14

*Christensen v. Stevedoring Servs. of Am.*,
557 F.3d 1049 (9th Cir. 2009)......................................................................2

*Cunningham v. County of Los Angeles*,
879 F.2d 481 (9th Cir. 1988).....................................................................2, 3

*FTC v. Southern Glazers Wine & Spirits, LLC*,
No. 8:24-cv-02684-FWS (C.D. Cal., filed Dec. 12, 2024)................................9

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013)...............................................................*passim*

*Indep. Living Ctr. of S. California, Inc. v. Kent*,
909 F.3d 272 (9th Cir. 2018)........................................................................15

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975).....................................................................12, 13

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ..........................................................................*passim*

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020)............................................................3, 7, 9, 15

*Muniz v. United Parcel Serv., Inc.*,
738 F.3d 214 (9th Cir. 2013).........................................................................14

*O'Bannon v. National Collegiate Athletic Association*,
739 F. App'x 890 (9th Cir. 2018)..........................................................2

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)..............................................................10, 11

*Precision Printing Co. v. Unisource Worldwide, Inc.*,
993 F. Supp. 338 (W.D. Pa. 1998) ....................................................5

*Seachris v. Brady-Hamilton Stevedore Co.*,
994 F.3d 1066 (9th Cir. 2021)............................................1, 5, 7, 10

*Sealy, Inc. v. Easy Living, Inc.*,
743 F.2d 1378 (9th Cir. 1984)..........................................................2

*Su v. Bowers*,
89 F.4th 1169 (9th Cir. 2024)..........................................................16

*Trendsettah USA, Inc. v. Swisher Int'l Inc.*,
2016 WL 11655117 (C.D. Cal. Aug. 17, 2016)........................................*passim*

## Other Authorities

CONTINGENT FEE, Black's Law Dictionary (12th ed. 2024) ...........................15

## INTRODUCTION

On the first issue in this cross-appeal, Wholesalers demonstrated that the district court abused its discretion when setting hourly rates for Wholesalers' counsel. Wholesalers supported their argument with six published Ninth Circuit opinions that demonstrate the rate-setting errors:

- The district court's failure to determine what the prevailing hourly rate for antitrust work in the Central District *is*. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) ("no Ninth Circuit case law supports the district court's apparent position that it could determine the hourly rates for the members of Plaintiffs' legal team, without relying on evidence of prevailing market rates.");

- Instead, the district court explicitly relied on rates that had been awarded to Wholesalers' counsel in a *contract* dispute, where that rate data was already two years old. 1-ER-9 ("the Court relies on the rates awarded in *Trendsettah*"). *But see Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1079 (9th Cir. 2021) ("the Supreme Court and this court have made clear that reasonable hourly rates should be established by reference to . . . legal work of *similar complexity*"); *id.* at 1077 ("fee awards must be 'based on current rather than merely historical market

conditions.'") (quoting *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1055 (9th Cir. 2009));

- The district court refused to award the *actual* prevailing rates for antitrust work "given that it could create a new benchmark for Plaintiffs' fee requests in the future." 1-ER-7–8. *But see Christensen*, 557 F.3d at 1079 ("the adjudicator's function 'is not to 'hold the line' at a particular rate.'") *and Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.").

Tellingly, Prestige doesn't try to distinguish *any* of the six precedential authorities upon which Wholesalers' arguments are based. Ans. Br. at 46-52. Instead, it argues only that district courts have "discretion" when awarding fees, citing three cases that concern only a district court's discretion in determining a reasonable number of *hours*. *Id.* at 47.[1] Even then, two of Prestige's cases prove precisely Wholesalers' point. *Sealy* remanded the rate inquiry because the district court had not "examine[d] the 'customary fee' prevailing in the community," 743

---

[1] Prestige cites *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988) ("The only dispute on appeal . . . concerns the number of hours reasonably expended"); *O'Bannon v. National Collegiate Athletic Association*, 739 F. App'x 890 (9th Cir. 2018) (not addressing rates); and *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (discussing reasonable number of hours).

2

F.2d at 1385, and *Cunningham* holds that "our reviewing function is finished" only "once we are satisfied that the district court has considered the appropriate factors." 879 F.2d at 486. The problem here is that the district court established rates based on *inappropriate* factors.

As for the second issue on cross-appeal, Wholesalers cited a slew of California and federal cases to show that the district court failed to properly evaluate the four *Ketchum* factors as to Wholesalers' eligibility for a fee enhancement stemming from their unprecedented success on the UPA claim. Here too, Prestige simply avoids the precedent. It cites no California or federal authority concerning state-law enhancement principles. Ans. Br. at 52-55. It instead relies only on cases indicating that the district court's denial would have been appropriate under *federal* law. *But see Chaudhry v. City of Los Angeles*, 751 F. 3d 1096, 1112 (9th Cir. 2014) ("[W]hen a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136-37 (2001) (expressly rejecting the federal precedent on enhancements).

"Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary." *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) (citing *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)). If not an outright concession, Prestige's failure to

respond to Wholesalers' arguments with relevant authority (on either issue) should be determinative. This Court should affirm the district court's judgment on the merits, but reverse the fees order, and remand for further proceedings under the correct fee-setting rules.

## ARGUMENT

## I. PRESTIGE FAILS TO JUSTIFY THE DISTRICT COURT'S RATE-SETTING ERRORS.

The district court's rate-setting methodology was an abuse of discretion because it (1) nowhere made reference to the proper benchmark (*i.e.*, the prevailing rate for antitrust litigation in the Central District), (2) was not based on *current* rates, and (3) was expressly set with an eye to constraining the rates that *future* courts might award to Wholesalers' counsel. Prestige fails to cite any relevant precedent to support these independently reversible errors.

### A. Prestige Nowhere Defends the District Court's Error In Failing To Identify the Prevailing Rate For Antitrust Work.

Prestige's failure to use subheadings makes its argument difficult to parse, but at one point it concedes that "the district court did not make a finding on the prevailing rate for antitrust work in the Central District of California." Ans. Br. at 49. That is sufficient ground for reversal, because as explained in *Gonzalez*, where a district court does not use as its starting point "the market rate prevailing in the Central District of California for attorneys [ ] of similar 'experience, skill, and

4

reputation' . . . working on similarly complex matters," "[t]his alone requires us to vacate the fee award and remand." 729 F.3d at 1206.

Prestige nevertheless argues that because the court awarded rates of "$1,070 and $975 per hour," this Court "can easily glean" that those rates *were* its determination of the prevailing rate for antitrust work in the Central District. Ans. Br. at 49-50. There are many problems with this argument. For one, it lacks any support in the district court's own explanation. As the district court explained, it "relies on the rates awarded in *Trendsettah*," which it acknowledged was "a contract dispute." 1-ER-9. But as this Court explained in *Seachris*, "the Supreme Court and this court have made clear that reasonable hourly rates should be established by reference to . . . legal work of *similar complexity*." 994 F.3d at 1079. Neither Prestige nor the district court made any attempt to explain how *Trendsettah* was of "similar complexity" to this case. *Id.* Nor could they. In *Trendsettah*, the defendant's witnesses "verbally conceded that Swisher's failure to deliver cigarillos was breach." *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, 2016 WL 11655117, at *10 (C.D. Cal. Aug. 17, 2016). Any attempt to equate an admitted breach of contract with the complexity of an RPA action would be fruitless. *See Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 345 (W.D. Pa. 1998) ("numerous courts and commentators have noted that

5

Robinson-Patman is one of the most difficult, if not inscrutable, antitrust laws in existence") (collecting citations).

Admittedly, the district court added $25/hour to the named partners' *Trendsettah* rates "to account for the complexity of this action and inflation since 2023." 1-ER-9. But without having made a finding as to what the prevailing rate *is* for work of similar complexity, by what basis did the court divine that $25 was appropriate? Since that 2% increase was not made with reference to any relevant data (and since 2% is far short of "inflation" alone), the $25 adjustment was by definition arbitrary.

An independent problem with Prestige's suggestion that this Court should "glean" that the rates awarded *were* the district court's finding as to the prevailing rate for antitrust litigation is that elsewhere in its brief Prestige expressly stipulates that they were *not* antitrust rates: "like the district court in our case, the [*Trendsettah*] court applied general litigation rates." Ans. Br. at 49 (citing 2023 WL 8263365, *14).

## B. Prestige Does Not Dispute That the District Court Failed to Award Current Rates.

Even supposing that the precedent permitted the district court to award "general litigation" rates instead of antitrust litigation rates, Prestige nowhere responds to Wholesalers' argument that the district court erred by awarding

6

historic rather than current rates. Wholesalers' Br. at 60-61. It thus concedes that argument. *LN Mgmt.*, 957 F.3d at 950.

As Wholesalers explained, the precedent provides that "fee awards must be 'based on current rather than merely historical market conditions,'" and "the adjudicator should rely on the most current information available." Wholesalers' Br. at 49 (quoting *Seachris*, 994 F.3d at 1077-78 (in turn quoting *Christensen*, 557 F.3d at 1055)). As Wholesalers further explained, the *Trendsettah* rates were based on data from 2022, while this fee petition was filed in June 2024. *See Trendsettah*, 2023 WL 8263365, at *14 ("the Court finds the 2022 Real Rate Report third quartile Los Angeles rate for general litigation to be a reasonable basis").[2]

Even if the court had been permitted to award "general litigation" rates in this antitrust case, it did not rely on the "the most current information available." *Seachris*, 994 F.3d at 1077-78. The 2023 Real Rate Report was presented to the court, and it reported the third-quartile rate for "general litigation" partners in Los Angeles (the figure used in *Trendsettah*) to be $1,159 even as of 2023, a full year prior to Wholesalers' 2024 fees motion. SER-80. But without explanation, the

---

[2] The *Trendsettah* court permissibly used the 2022 Real Rate Report because at the time it was the most current data. *See Seachris*, 994 F.3d at 1078 ("reliance on evidence of historical market conditions is particularly appropriate when it is the most current information available.").

court disregarded that current rate, instead adding 2% to the historical *Trendsettah* rate "to account for the complexity of this action *and* inflation since 2023." 1-ER-9 (emphasis added). Even if we ignore "complexity," Prestige does not dispute that 2% is far below even the CPI rate of inflation, let alone the *relevant* rate of "inflation"—in legal fees, which Prestige did not dispute was an additional 6% though just the first *half* of 2024. Wholesalers' Br. at 51, 55.

## C. Prestige Nowhere Defends the District Court's View That Antitrust Lawyers Must Work for Large Firms to be Entitled to the Prevailing Rate.

Likewise, Prestige nowhere directly responds to Wholesalers' argument—echoing several district courts—that rates are to be set with reference to the skill and reputation of the "attorneys," not the size of the *firm* that employs them. Wholesalers' Br. at 57-59 (collecting cases). Prestige's own fees expert acknowledged that "[c]onsidering their experience and qualifications, not to mention the results they obtained in this matter, I do not dispute counsel's classification as 'third quartile' lawyers." SER-28. And neither Prestige nor the district court dispute the fact that Wholesalers' counsel are the most experienced and successful RPA litigators in the country.[3] Ans. Br. at 46-52.

---

[3] In recently initiating its first RPA enforcement action "in more than two decades," the FTC followed a trail blazed by Gaw | Poe. https://www.nytimes.com/2024/12/12/business/ftc-alcohol-lawsuit-illegal-

While it is unclear how exactly the district court accounted for firm-size mathematically, it is clear that that factor influenced its rejection of the requested rates. The district court reasoned that "[n]otwithstanding Plaintiffs' counsel's background, accolades, and expertise in this area of the law, it is simply unreasonable to award big law rates to a four-person firm representing mom-and-pop warehouses." 1-ER-8. On remand, the district court should be instructed that it is to consider the experience and reputation of the "attorneys," not the size of their firm. *See Gonzalez*, 729 F.3d at 1205-06. It should also be instructed that trial courts are not to discount rates on the ground that the prevailing plaintiffs are merely "mom-and-pop warehouses," undeserving of the prevailing rate in the community. 1-ER-8; s*ee* Wholesalers' Br. at 58-59.

### D. Prestige Nowhere Defends the District Court's 'Line-Holding' Rationale Against Awarding Fees at the Prevailing Rate.

In the same vein as the other points, Prestige nowhere defends the district court's decision to cap rates at 1% annual increases to the *Trendsettah* rate, in order to prevent "a new benchmark for Plaintiffs' fee requests in the future." 1-ER-7–8. Again, another conceded point. *LN Mgmt.*, 957 F.3d at 950.

---

pricing.html. The FTC's complaint borrows liberally from Gaw | Poe's complaint against the same distributor, and the FTC sought and obtained permission to have its case deemed "related" to Gaw | Poe's pending action. *See FTC v. Southern Glazers Wine & Spirits, LLC*, No. 8:24-cv-02684-FWS, Dkt. No. 4 (C.D. Cal., filed Dec. 12, 2024).

As explained, the controlling precedent clearly holds that "the adjudicator's function 'is not to 'hold the line' at a particular rate,'" *Seachris*, 994 F.3d at 1079 (quoting *Moreno*, 534 F.3d at 1115), but to simply award the *current* prevailing rate for similar work, "no more, no less." *Moreno*, 534 F.3d at 1111. Just as trial judges have no power to suppress the free-market rates negotiated between antitrust defendants and their counsel, they should have no power to artificially suppress the rates that are awarded to antitrust plaintiffs when their counsel do the exact same work as their defense-side colleagues, but *win*.

### E.    Prestige's Other Arguments are Unavailing.

While not in direct response to Wholesalers' brief, Prestige makes two other arguments seemingly in support of the lower-than-prevailing rates the court awarded.

First, Prestige argues that lawyers who are retained on a contingent basis should not be entitled to hourly rates commensurate with lawyers who "***actually billed the plaintiff for that work.***" Ans. Br. at 50 (emphasis in original). Although unclear, Prestige seems to be suggesting that courts should perform some kind of downward adjustment based on the nature of the engagement agreement. But that ship has sailed. The Supreme Court holds that reasonable hourly rates are simply "'the prevailing market rates in the relevant community'" for "a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*,

10

559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Moreover, as recognized in *Image Technical Service, Inc. v. Eastman Kodak Co.*,

"[a]ny fee award in an antitrust case goes to the successful plaintiff, not to

plaintiff's counsel." 136 F.3d 1354, 1357 (9th Cir. 1998). The Court explained

that this is "part of the penalty for the defendant's violation of the antitrust laws,"

and "'[i]f [the client] chooses to pass that money on to his attorneys, that is his

business.'" *Id.* (quoting *Farmington Dowel Prods. Co. v. Forster Mfg. Co.*, 421

F.2d 61, 88 (1st Cir. 1970)). Furthermore: "'The imposition of this penalty was

not meant to turn in any way on the nature or amount of the plaintiff's fee

arrangement, a fortuity wholly unrelated to defendant's illegal conduct.'" *Id.*

(quoting *Perkins v. Standard Oil Company of California*, 474 F.2d 549, 553

(1973), internal alterations accepted).

Second, Prestige argues that the district court could have awarded lower than

the market rate based on it having "admonished Plaintiffs' lead trial counsel for

misstating the law in this Circuit." Ans. Br. at 51. As an initial matter, the

misstatement was counsel's belief that the Ninth Circuit had joined two other

circuits in holding that a disfavored purchaser need not show that it *requested* a

particular form of discount to prove the defendant's liability for withholding it.

10-ER-2437. The district court summarized: "you told me something that you did

not know to be true, as to what the Ninth Circuit wants me to do, and you admit it.

11

At least you've admitted it. Sir, you are admonished." 10-ER-2438. While counsel's misstatement was plainly an unacceptable error, the district court agreed that the underlying proposition argued by counsel is legally correct.[4] And it instructed the jury accordingly. 5-ER-1059 (Inst. No. 26).

Moreover, the district court does not seem to have attributed any significance to counsel's error in its award of fees. It nowhere mentioned the admonishment in its fees order, 1-ER-2–15, nor otherwise resurfaced the incident in the remainder of the proceedings. *See* 10-ER-2439–14-ER-3777. And following the return of the verdict, the district court praised both sides' counsel for their skill in trying the case. 14-ER-3773.

## II. PRESTIGE DISREGARDS THE AUTHORITY ON STATE-LAW BASED ENHANCEMENTS.

As previewed in the *Introduction*, Prestige's defense of the district court's denial of a lodestar enhancement is almost entirely inapt, because Wholesalers challenge the denial of a *state-law* enhancement respecting their UPA claims, while Prestige's response relies solely on authority governing *federal* enhancements. Prestige argues, for example, that a court "may adjust the lodestar figure upward or downward" based on the *Kerr* factors. Ans. Br. at 52 (quoting

---

[4] As counsel explained, the mistake arose from hasty in-court Shepardizing of *Alterman Foods, Inc. v. FTC*, 497 F.2d 993 (5th Cir. 1974), the leading case for the proposition. 10-ER-2438.

*Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 715-16 (S.D. Cal. 2014) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). But *Kerr* does not control state-law based enhancements; *Ketchum* does. *See Chaudhry*, 751 F.3d at 1112 (remanding for consideration of a *Ketchum*-based enhancement). Given that Prestige fails to cite *Ketchum* even once in its entire brief, one would be hard-pressed to say that Prestige has in any way meaningfully addressed Wholesaler's arguments that the district court misapplied all four *Ketchum* factors.

Similarly, Prestige tells the Court that "'[a]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion.'" Ans. Br. at 53 (quoting 1-ER-0012 (in turn quoting *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020))). But that is the exact *opposite* of California law. The California Supreme Court holds that "the unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (emphasis in original). The district court made the same error that Prestige makes, mixing up federal- and state-law enhancement principles. Contrary to *Ketchum*'s explanation that under California law the lodestar "does *not* include . . . other factors a trial court may consider," *id.*, the district court expressly

13

reasoned that the first three *Ketchum* factors had already been accounted for in its lodestar award. 1-ER-14 (explaining that "most of the [*Ketchum*] factors have already been considered in the Court's lodestar calculation," and therefore considering *only* the preclusion-from-other-work factor as a potential basis for enhancement).

Prestige also asserts that "an enhancement can be justified only in 'rare' and 'exceptional' cases." Ans. Br. at 53 (quoting 1- ER-0012 (in turn quoting *Edmo v. Corizon, Inc.*, 97 F.4th 1165 (9th Cir. 2024))). But that too is the federal standard. As the California Supreme Court has explained, due to California's lower standard, "[a]n upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 n.6 (2010)); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 221 n.4 (9th Cir. 2013) (quoting same).

While nowhere citing *Ketchum*—or any other authority on state-law enhancements—Prestige nevertheless defends the denial only by repeating what the district court *wrote*. For example, it repeats the district court's reasoning that this case "was 'not truly contingent' because Plaintiffs' counsel's remuneration 'does not hinge in any way on the monetary value of Plaintiffs' recovery.'" Ans. Br. at 54 (quoting 1-ER-0013.) That repetition wholly ignores the point Wholesalers' made in their brief—that the district court's view of what makes a

case contingent for enhancement purposes was expressly rejected by *Ketchum*, as recognized in *Greene v. Dillingham Constr., N.A., Inc.*: "[I]n *Ketchum* . . . the Supreme Court has reaffirmed that contingent risk is a valid consideration in determining whether to apply a fee enhancement in cases where attorney fees are authorized by statute."). *See* Wholesalers' Br. at 66-67.[5]

This cross-appeal is in the exact same posture as the trial court decision at issue in *Greene*. There, the trial court had—like this one—discussed other potential bases for denying an enhancement. 101 Cal. App. 4th at 258. But because the trial court had misunderstood the contingency factor in precisely the same way that this trial court did, the Court of Appeal held that "we *must* remand the matter to the trial court for it to exercise its discretion on whether a fee enhancement is merited in this case for contingent risk." *Id.* (emphasis added). True to *Erie*, this Court should do the same. *Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018) (noting that a purpose of *Erie* is "to prevent the 'result of a litigation materially to differ because the suit [was] brought in a federal court.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 467 (1965)).

---

[5] The district court reasoned that this case was "not truly contingent" because "[s]o long as Plaintiffs were the prevailing party, counsel was guaranteed recovery of fees for the reasonable hours worked." 1-ER-13. *But that is the literal definition of a "contingent" case. See* CONTINGENT FEE, Black's Law Dictionary (12th ed. 2024) ("A fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court.").

Similarly, Prestige defends the district court's finding on the third *Ketchum* factor only by repeating what the district court wrote—that counsel's work on this case did not preclude other employment because it only precluded them from pursuing other RPA cases. Ans. Br. at 54 (citing 1-ER-13). To the district court's rationale, Prestige adds only that Wholesalers' counsel are "serial litigators when it comes to the RPA." *Id.* True enough, but that is also what makes them the most accomplished (a point which neither Prestige nor the district court disputes). Regardless, the same "serial litigators" tag could be attached to practitioners of § 1983, or to "serial litigators" of the Sherman Act, or "serial litigators" of securities claims. No authority suggests that the "preclusion from other work" factor requires the prevailing counsel to show that their representation of the successful plaintiff precluded them from taking work in practice areas *outside* their specialty. But that is exactly the rationale relied upon by the district court, and repeated here by Prestige. That rationale for finding this third *Ketchum* factor unsatisfied was thus an abuse of discretion because it was "illogical, implausible or without support in inferences that may be drawn from the facts in the record." *Su v. Bowers*, 89 F.4th 1169, 1177 (9th Cir. 2024) (citations omitted).

Finally, like the district court, Prestige fails to address the first two *Ketchum* factors: "(1) the novelty and difficulty of the questions involved, [and] (2) the skill displayed in presenting them." 24 Cal. App. 4th at 1132. On the first of these, the

district court nowhere considered the fact that counsel's success was "novel" in the literal sense:  This was evidently the first plaintiff-side jury verdict in the 83-year history of section 17045.  SER-33, SER-44.  And on the second, other than a kind comment after the verdict came back, 14-ER-3773, the district court did not give its assessment of counsel's "skill" in presenting this particular case.  As an appellate matter, the problem is that because the district court did not evaluate or comment on either factor, this Court has no means of evaluating whether the trial judge duly exercised his discretion respecting those factors.  *Gonzalez*, 729 F.3d at 1211 ("'[a]bsent some indication of how the district court's discretion was exercised, we have no way of knowing whether that discretion was abused.'") (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986)).

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment below, affirm the district court's permanent injunction, but vacate and remand the award of attorneys' fees with instructions for the district court to (1) set hourly rates for Wholesalers' counsel commensurate with the prevailing rate for antitrust work in the Central District of California by attorneys of comparable skill, experience, and reputation; and (2) evaluate the propriety of a fee enhancement associated with counsel's success on Wholesalers' UPA claim pursuant to the factors set forth in *Ketchum*.

Date:  February 28, 2025

Respectfully submitted,

 s/ *Mark Poe*
Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
415.766.7451
*Attorneys for Plaintiffs-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____ 24-3776, 24-5009, 24-5227 _____

      I am the attorney or self-represented party.

**This brief contains 4,042 words,** including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

      I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[X] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
      [ ] it is a joint brief submitted by separately represented parties.
      [ ] a party or parties are filing a single brief in response to multiple briefs.
      [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __ s/ *Mark Poe* _____ **Date** __ February 28, 2025 _____
*(use "s/[typed name]" to sign electronically-filed documents)*